UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ACCELERANT SPECIALTY
INSURANCE COMPANY,

        Plaintiff,                          Case No. 23-cv-10069

v.

                                         HON. MARK A. GOLDSMITH

MICHAEL BIDA,

        Defendant.
_____/

**OPINION & ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 21)**

Plaintiff Accelerant Specialty Insurance Company brought this action for declaratory relief against Defendant Michael Bida. Accelerant requests that the Court declare that an insurance policy Bida had secured from Accelerant is void due to alleged material misrepresentations made by Bida when applying for the policy. See Compl. (Dkt. 1). Bida counterclaims for breach of contract. See Answer with Counterclaim (Dkt. 6).

For the reasons that follow, the Court grants Accelerant's motion for summary judgment (Dkt 21).[1]

**I. BACKGROUND**

The following relevant facts are undisputed.

On August 31, 2022, Bida submitted an application for a marine insurance policy to cover

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion for summary judgment, the briefing includes Bida's response (Dkt. 22) and Accelerant's reply (Dkt. 27).

his vessel.² Def. Statement of Material Facts (SOMF) ¶ 3; see also Application at PageID.379–383 (Dkt. 21-4). Question 12 on the application asked: "Have you or any named operated [sic] been convicted of a criminal offence or pleaded no contest to a criminal action?" Application at PageID.381. Bida answered "no." Id. In the section specific to operators, the application asked again whether Bida had "ever been convicted of a criminal offence or pleaded no contest." Id. Again, Bida answered "no." Id. In the same section, the application included a box labeled "violations/suspensions (including auto) in the last five years." Id. In the box, Bida wrote "none." Id.

After reviewing the application, Accelerant issued Policy No. CSRYP/217031, with coverage beginning September 1, 2022. Def. SOMF ¶ 6 (citing Usher Decl. ¶ 24 (Dkt. 21-2)); see also Policy at PageID.385–402 (Dkt. 21-5).

On October 3, 2022, Bida sent a notice of loss to Concept, stating that the insured vessel had run aground and seeking coverage pursuant to the policy. Def. SOMF ¶ 10; Notice of Loss at PageID.405–407 (Dkt. 21-6). Following receipt of the notice, Accelerant began an investigation into the claim. Def. SOMF ¶ 11. During the investigation, Accelerant determined that Bida had two criminal convictions: (i) a conviction for driving under the influence (DUI) in Arizona in 2004, and (ii) a DUI in Arizona in 2006. Def. SOMF ¶ 12; 10/11/22 Boulon Email at PageID.409 (Dkt. 21-7); Bida Dep. at 26 (Dkt. 21-8). Bida did not disclose these DUIs during the application process. See Application at PageID.379–383; 10/11/22 Boulon Email at PageID.409.

When asked why he did not disclose the DUIs during the application process, Bida testified

---

² Bida submitted the application to Concept Special Risk, Ltd. Def. SOMF ¶ 3. Accelerant's underwriting agent during the relevant time period was Rivington Insurance Services. Id. ¶ 1. Rivington entered into an agreement with Concept under which all underwriting duties would be performed by Concept on behalf of Rivington. Id.

that his legal counsel for the DUIs had told him they would be removed from his record after seven years. Bida Dep. at 27–28. He elaborated:

> Since then I've owned a business and I've done multiple background checks, worked on multiple government projects, army bases of high security clearance, and nothing has ever come back. I mean those incidents were sixteen, eighteen years ago and I believed that they were off my record and that there was no reason to disclose on an application something that's not on my record.

Id. at 28.

After Accelerant received notice of the DUIs, Revel Boulon, a third-party claims administrator for Accelerant, emailed Bida stating that the insurance company would "proceed with settlement of the claim." 10/31/22 Boulon Email at PageID.581 (Dkt. 22-11). Boulon then created an initial adjustment report, in which he stated that the "underwriters advised that had [the DUIs] been disclosed upon application, due to the length of time elapsed disclosure of those on the application would not have changed their opinion." Initial Adjustment Report at PageID.591 (Dkt. 22-13). The next day, another Concept employee sent Boulon an email pointing out a mistake in Boulon's report, clarifying that the DUIs were considered material, and asking Boulon to correct it. 11/7/22 Email at PageID.748 (Dkt. 27-4). Boulon then issued an amended report, which stated that the undisclosed DUIs had been submitted to underwriters "for their evaluation to determine materiality." Am. Adjustment Report at PageID.597 (Dkt. 22-14).

Subsequently, Bida received a letter informing him that his claim would be delayed due to his past DUIs. Resp. at 4. A month later, Bida received a letter informing him that the claim would not be paid, as the undisclosed DUIs were found to be a material misrepresentation. Id.

Accelerant filed this action for a declaratory judgment in January 2023. Bida counterclaimed for breach of contract based on Accelerant's refusal to provide coverage under the policy.

3

## II. ANALYSIS[3]

The policy includes a choice of law clause, providing:

> It is hereby agreed that any dispute or claim arising hereunder (including non-contractual disputes or claims), or in connection with this Insuring Agreement, shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, any dispute or claim arising hereunder (including non-contractual disputes or claims), or in connection with this Insuring Agreement, is subject to the substantive laws of the State of New York.

Policy at PageID.402. Further, "[m]arine insurance contracts qualify as maritime contracts, which fall within the admiralty jurisdiction of the federal courts and are governed by maritime law." GEICO Marine Ins. Co. v. Shackleford, 945 F.3d 1135, 1139 (11th Cir. 2019). Neither party disputes that federal admiralty law governs this dispute. The Court will, therefore, rely on federal admiralty law in its analysis.

Accelerant contends that the policy must be declared void due to Bida's violation of the rule of uberrimae fidei, or "utmost good faith." Mot. at 17–22. As articulated by the Supreme Court, under the doctrine of uberrimae fidei, "a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option." Stipcich v. Metro. Life Ins. Co., 277 U.S. 311, 316 (1927). This doctrine "requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk." HH. Marine Servs., Inc. v. Fraser, 211 F.3d 1359, 1362 (11th Cir. 2000).

---

[3] In assessing whether a party is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). A court will grant a motion for summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1985).

4

Bida does not dispute that he failed to disclose his DUIs. See Resp. The only question to be resolved is whether that nondisclosure was material.

"Materiality examines whether a fact would have influenced the judgment of a reasonable prudent underwriter in deciding whether to insure at all or at a particular premium." Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York, 822 F.3d 620, 638 (2nd Cir. 2016) (punctuation modified, emphasis omitted).

In support of its argument for materiality, Accelerant provides both an excerpt from Concept's underwriting manual and testimony from Concept's managing director and senior underwriter. The excerpt Accelerant submits from Concept's underwriting manual includes the following language:

> We should also not consider offering insurance for anyone with drug or alcohol convictions including driving under the influence of alcohol unless there is an extenuating circumstance and a Director has agreed to our offering terms.

Underwriting Manual at PageID.435 (Dkt. 21-9). The statement that underwriters should "not consider offering insurance" for applicants with convictions for driving under the influence of alcohol, except under certain limited circumstances, certainly constitutes evidence that knowledge of Bida's convictions would have influenced the underwriter's decision to insure at all.

Bida argues that the language from the underwriting manual is "not conclusive," as it does "not state that such an omission is material or that those with DUI convictions will not be offered coverage or that coverage will be extended for an additional premium." Resp. at 9. Bida cites Great Lakes Ins. SE v. Lassiter, No. 21-21452, 2022 WL 1288741, at *13 (S.D. Fla. Apr. 29, 2022) for this conclusion. In that case, the court found a factual issue as to whether information regarding a criminal conviction was material where an underwriting manual did not specifically "state that a

5

criminal conviction is material to the risk; rather, it stat[ed] that such convictions 'might influence the insurer's perception of a risk.'" (punctuation modified, emphasis in original).

The analogy to Lassiter is not persuasive. First, the Lassiter court found only that the underwriting manual was not dispositive—not that it indicated non-materiality. And the court did not rely only on the underwriting manual in finding a question of fact as to materiality. Rather, the court found a question of fact in part because there were competing declarations—both parties provided testimony as to the materiality of the information regarding the criminal conviction. See Lassiter, 2022 WL 1288741, at *12, *14. Here, Bida has provided no expert declarations to refute the one provided by Accelerant.

Second, the language in the underwriting manual at issue in Lassiter is different from the language in the manual at issue here. The underwriting manual in Lassiter stated: "[A]nything that might influence our perception of a risk is material . . . . These include enquiries as to past criminal convictions." Id. at *12. The court found that the manual's "hedging language undercut[] [the insurer's] argument that reasonable minds cannot differ on the issue of materiality." Id. at *13. The language in the underwriting manual in Lassiter is a much less definitive statement than this underwriting manual's statement that an underwriter for Concept should not consider offering insurance to those with DUIs.

The language in this case is more akin to that in Great Lakes Ins. SE v. SEA 21-21 LLC, 568 F. Supp. 3d 1318, 1326 (S.D. Fla. 2021), another case cited in Bida's brief. The language from that case read: "If an owner has had previous losses, these must be taken into consideration when deciding whether or not to offer terms and these will impact the price charged." Id. The court found the underwriting language to "adequately support a finding of materiality." Id. The

6

language here is even more indicative of materiality than the language in SEA 21-21 LLC, and the Court finds it to support materiality.

Also as evidence of materiality, Accelerant submits a declaration from Beric Usher, the managing director and senior underwriter for Concept. Usher testifies that "DUIs are always material, and at the very least an addition [sic] premium will always be charged, if coverage is not declined outright," Usher Decl. ¶ 28, and that "[t]he matter of an insured's criminal history, and DUI's [sic] in particular, is always of concern to Concept, and to any reasonable underwriter, as it is an indicator of the insured's care and skill in operating the vessel, and it is the best indicator of the likelihood of future losses," id. ¶ 32. Specific to Bida's policy, Usher stated that, had Bida truthfully disclosed his 2004 and 2006 DUIs, he would have been charged approximately 10% more in premium. Id. ¶ 35.

Bida argues that Usher's testimony should be excluded. Bida's first argument against the Court's consideration of Usher's testimony is that it is self-serving. Resp. at 7–9. In support of this argument, Bida cites SEA 21-21 LLC, 568 F. Supp. 3d 1318, and Lassiter, 2022 WL 1288741, both cases in which the court considered testimony from Usher. In SEA 21-21 LLC, the court deemed Usher's declaration regarding materiality "a retrospective, self-serving statement inadequate on its own to support [the insurer's] assertion of materiality." SEA 21-21 LLC, 568 F. Supp. 3d at 1330. In Lassiter, the court found Usher's declaration to contain "post-hoc conclusions [that] are self-serving and insufficient to conclude that [the insured's] criminal history is material." Lassiter, 2022 WL 1288741, at *13.

These comparisons are unpersuasive for two reasons. First, the SEA 21-21 LLC and Lassiter courts did not state, as Bida suggests, that all declarations from underwriters employed by the insurance companies are self-serving; they were descriptions only regarding the specific

7

declarations submitted in those cases. And, notably, the court in Lassiter credited underwriter declarations submitted by each side, as they created an issue of fact on materiality. Lassiter, 2022 WL 1288741, at *12, *14. Here, the Court is satisfied that Usher's declaration—which explains his background and risk assessment process and includes details regarding Bida's specific case—is competent and admissible evidence that must be considered.

Second, in Lassiter, the court held the declaration to be "insufficient to conclude" that the missing information was material. Lassiter, 2022 WL 1288741, at *13. Similarly, in SEA 21-21 LLC, the court stated only that the "retrospective, self-serving statements" contained in Usher's declaration were inadequate to support the insurer's claim of materiality when considered "alone." SEA 21-21 LLC, 568 F. Supp. 3d at 1326 (emphasis added). In fact, in SEA 21-21 LLC, the court found materiality, despite the "self-serving" declaration, because of the additional evidence offered in the form of an excerpt from the insurer's underwriting manual. SEA 21-21 LLC, 568 F. Supp. 3d at 1326. In the present case, there is similar evidence of an underwriting manual that supports materiality; Usher's declaration is not being considered alone.

Bida also argues that Usher's testimony is inadmissible because he has not been identified as an expert witness by Accelerant—which Bida argues is required because Usher's opinion rises to the level of expert testimony under Federal Rule of Evidence 702. Resp. at 10–11. The Court finds that Usher is not an expert witness and did not need to be designated as such.

Lay witnesses may testify to opinions or inferences which are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness's testimony or a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 701." Fed. R. Evid. 701. Lay witnesses can testify based on "particularized knowledge that the witness has by virtue of his or her position in the business." Id.; Advisory Committee

8

Notes, 2000 Amendments; see also Police & Fire Ret. Sys. of City of Detroit v. Watkins, 2011 WL 5307594, at *5 (E.D. Mich. Nov. 3, 2011) (collecting cases). Here, Usher is testifying regarding his opinion of what a reasonable underwriter would do if presented with an application disclosing Bida's DUIs, testimony based on "particularized knowledge" he has gained by "virtue of his . . . position in the business." Id. Accelerant did not need to designate Usher as an expert witness; his testimony is admissible as lay opinion testimony. See Am. Gen. Life Ins. Co. v. Schoenthal Fam., LLC, 248 F.R.D. 298, 305–306 (N.D. Ga. 2008) (rejecting the argument that an underwriter should have been designated as an expert witness and holding his statements regarding materiality to be "within [the witness]'s factual knowledge and permissible lay opinion as an . . . underwriter.").

The Court is satisfied, after considering Usher's testimony and the underwriting manual, that Accelerant has provided sufficient evidence to demonstrate that knowledge of Bida's DUIs would have "influenced the judgment of a reasonable prudent underwriter in deciding whether to insure at all or at a particular premium," such that the information was material.

Bida provides two additional arguments, neither of which the Court finds persuasive.

First, Bida argues that the fact that the application specifically requests information regarding "violations/suspensions (including auto) in the last five years" is confusing. Resp. at 9–10. In support of this argument, he cites La Reunion Francaise v. Christy, 122 F. Supp. 2d 1325, 1331 (M.D. Fla. 1999), in which the court did not find an insured's failure to disclose a criminal conviction to be material where the application had asked about "violations/suspensions (including auto) in last 5 years." "This request for information likely led [the insured], and leads this [c]ourt, to the conclusion that convictions older than five years were not considered material or important. Otherwise, there would be no specification of five years only." Id. Christy is distinguishable. In

that case, there was no indication whether the application asked any questions about criminal convictions. Here, the application directly asked about criminal convictions—with no time limit—in two other places. See Application at PageID.381. Given the direct questions about criminal convictions, the Court finds that it would have been unreasonable for Bida to assume, based on the question about "violations/suspensions (including auto)," that other criminal convictions older than five years would not be material.

Second, Bida argues that that the initial report by Boulon, which stated that the nondisclosure of the DUIs was not material, creates a question of fact. Resp. at 12. He notes that Boulon testified that he had "personally handled hundreds of claims for Accelerant," yet Boulon initially thought the DUIs were not material. Id. (citing Boulon Dep. at 14 (Dkt. 22-17)).

But Bida misses the mark in a number of ways. Boulon was a claims adjuster—not an underwriter. He stated in his deposition that determining whether something is material is "not his role," but rather is "an underwriting thing." Boulon Dep. at 31. He had adjusted many claims, but he had no history or expertise in making determinations of materiality. See Boulon Dep. at 14; 30–32.

It is true that Boulon stated in his initial report that the underwriters had advised that disclosure of the DUIs "would not have changed their opinion." Initial Adjustment Report at PageID.591. However, as he explained at his deposition, Boulon misunderstood what the underwriters had determined. He initially thought they had deemed the nondisclosure immaterial, and on that basis wrote his initial report. Boulon Dep. at 29–30. He later learned that they deemed it material. Id.

Boulon's misunderstanding does not create an issue of fact regarding materiality. His misunderstanding does not translate into evidence that the nondisclosure of the DUIs was

somehow immaterial. And his misunderstanding does not mean that Accelerant does not have evidence of materiality. At bottom, Bida has no evidence to present to a factfinder on the question of materiality.

The Court finds that Accelerant has demonstrated that disclosure of Bida's DUIs would have influenced Accelerant in "deciding whether to insure at all or at a particular premium." Fireman's Fund Ins. Co., 822 F.3d at 638. And there is no countervailing evidence to refute that. The Court agrees with Accelerant and finds that the policy is void and that no coverage is owed.

### III. CONCLUSION

For the reasons explained above, the Court grants Accelerant's motion for summary judgment (Dkt. 21).

Although Accelerant did not formally move for summary judgment on Bida's counterclaim, it appears that the counterclaim must now be dismissed with prejudice. However, if Bida believes otherwise, he must file, within 10 days of the issuance of this opinion, a memorandum explaining why dismissal of the counterclaim is not now warranted. If no memorandum is filed, the parties must submit a proposed judgment via the utilities function within 20 days of the issuance of this opinion, provided they can agree on the form of the judgment; if they cannot, Accelerant must file a motion for entry of judgment within that same timeframe.

SO ORDERED.

Dated: September 29, 2024　　　　　　　　　　　　　s/Mark A. Goldsmith
Detroit, Michigan　　　　　　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge